UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTHER K. JOZLIN,

       Plaintiff,        CIVIL ACTION NO. 12-cv-10999

   vs.

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]

Plaintiff Esther Jozlin seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 13). With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket no. 15.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of March 2, 2010, alleging that she had been disabled since December 31, 2008, due to a back injury, a neck injury, herniated discs, scoliosis, radiculopathy, degenerative disc disease, depression, and post traumatic stress disorder. (TR 131, 153.)  The Social Security Administration denied

benefits. (TR 88-91.) Plaintiff requested a *de novo* hearing, which was held on July 14, 2011, before Administrative Law Judge (ALJ) Ethel revels, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 19.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. Plaintiff and Defendant each filed their Motions for Summary Judgment.

## II. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A. Plaintiff's Testimony

Plaintiff was 43 years old at the time of the administrative hearing and 41 years old at the time of alleged onset. (*See* TR 31-32.) Plaintiff has past work experience as an office manager and a receptionist. (*See* TR 32-34.) Plaintiff testified that she hasn't worked since December 2008 when she was in an automobile accident. (TR 34.) Plaintiff testified that she lives with her husband, her five children, and one grandchild. (TR 43.) Plaintiff has her GED, which she obtained in 1993. (TR 154.) Plaintiff testified that she has a license and used to drive but that her husband now does all of the driving. (TR 63.)

Plaintiff testified that she was diagnosed with scoliosis at the age of 15 but that it never interfered with her ability to work. (TR 54.) She also testified that she has low blood sugar, Crohn's disease, and diverticulitis but that those conditions have likewise not presented her with problems related to employment. (TR 51-52.) Plaintiff told the ALJ that she was in an automobile accident on December 16, 2008, and that while recovering from that accident, she was in a second automobile accident. (TR 35.) Following the accident, she began to have "severe back pain that radiates down [her] legs and into [her] toe on both big toes." (TR 36.) She also has "severe neck pain that radiates

above, starting form the back around [her] head, radiates down [her] shoulders, down the shoulder blades on both sides, and into [her] hand." (TR 36.) Plaintiff further testified that she has ringing in her ears all the time and that she has lost approximately 35% of her hearing in both ears. (TR 36.) She testified that she suffers from migraine headaches (although her doctors do not call them migraines). (TR 38.) Plaintiff also indicated that her feet swell up with blood unless she wears support hose or keeps her feet elevated. (TR 39.) She testified that she has memory loss, she can no longer write things in the correct order, and that she is suffering from post-traumatic-stress disorder and depression. (TR 35, 40, 42.)

With regard to her physical ailments, Plaintiff testified that because of her back pain, she can't bend in half, which causes her to hold herself up and put pressure on her neck. This, in turn, increases her headaches. As Plaintiff put it, "it's all connected." (TR 40-41.) Plaintiff indicated that the pain is so bad that she cannot use the toilet because she cannot bend or twist to wipe herself. (TR 41.) She told the ALJ that the pain is so severe that she stays awake for 48 hours at a time, four or five times a week. (TR 43-44.) Plaintiff testified that she has headaches every day, "they're pretty much 24/7," and that the pain level is a four out of ten on a good day and a twelve out of ten on a bad day; she stated that the severe pain can last 24 to 48 hours. (TR 55, 56.) She indicated that her headaches are worse when she comes home after leaving her house for the day. (TR 55.) Plaintiff also testified that she has pain of about a six on a ten-point scale when sitting and that she stands up and lays down to help with the pain. (TR 57.) Plaintiff testified that she can only stand for five or ten minutes or walk a step or two without being in pain. (TR 58.) She indicated that she could not lift a gallon of milk. (TR 59.)

To treat her physical symptoms, Plaintiff indicated that she alternates between the use of a TENS unit and the use of a hot-and-cold unit. (TR 45.) She uses them for five to ten minutes each

3

about three times a day. (TR 45.) Plaintiff testified that she takes Vicodin for her pain but that it makes her nauseous and "loopy." (TR 62.) Moreover, Plaintiff stated, the Vicodin only takes the edge off her pain; it does not eliminate it. (TR 62.) Plaintiff further testified that at the time of the hearing, she had been walking in a pool three minutes at a time for about two weeks. (TR 55-56.)

With regard to her mental impairments, Plaintiff testified that she feels "helpless, hopeless," and that she cries all the time. (TR 42.) She stated that she "may not leave [her] house for two or three months at a time unless [she has] a doctor's appointment." (TR 42.) She indicated that her depression is another reason that she doesn't sleep; she is "usually sitting there crying all night." (TR 44.)

Plaintiff testified that at the time of the hearing, she was in the process of switching psychiatrists. (TR 48.) Plaintiff testified that she "was making some progress" at Blue Water Clinic, but she hadn't been there since August 2010 when she missed an appointment and couldn't pay the late fee. (TR 48.) She indicated that she was hoping to return there when should could catch up on her payments. (TR 49.)

Later in her hearing, after the VE finished testifying, the ALJ followed up on one issue with Plaintiff. Plaintiff testified that she was not a candidate for surgery because they could not narrow down the location of her pain. (TR 69-70.) The ALJ inquired about having a discogram to narrow down the focal point of the pain, and Plaintiff testified that the discogram required her doctors to place needles in her spine to try to identify the bad discs. (TR 70.) She indicated that she elected not to have the procedure because "it's really, really painful. . . . [and] I could go through all that and still not be able to have the surgery." (TR 70-71.)

  **B.**   **Medical Record**

Defendant acknowledges that "[t]he ALJ and the Plaintiff offer a full discussion of the

4

relevant medical evidence in this case." (Docket no. 13 at 7 (citing TR 9-18; docket no. 10 at 6-10).) Thus, the Court will adopt the Medical Record as set forth in Plaintiff's brief and the ALJ's decision and will supplement those discussions only as necessary throughout this Opinion and Order.

### C. The Vocational Expert

The ALJ asked the VE to consider an individual who was of the same age, education, and past work experience as Plaintiff. (TR 67.) The ALJ asked the VE to consider that this person required "work that will allow for simple repetitive tasks." (TR 67.) The ALJ further defined what he meant by "simple, repetitive tasks":

> I'm using that to describe unskilled work because I do find that there are moderate limitations in ability to maintain concentration for extended periods because of the pain. But there is marked limitations in ability to carry out detailed instructions because of some depressive symptoms, as well as some of the residuals from pain.

(TR 67.) The ALJ continued that this individual was precluded from frequent bending and from climbing ropes, scaffolds, or ladders. (TR 67.) The ALJ also indicated that the person could not drive and that she would require a sit/stand option. (TR 67.) The VE testified that such an individual could perform light, unskilled work as an inspector checker (6,000 jobs reduced to 3,000 for a sit/stand option), a small products assembler (8,000 jobs reduced to 4,000), and a packer (6,000 jobs reduced to 3,000). (TR 67.) The VE indicated that these were only examples of the work that was available for such an individual. (TR 67.)

The ALJ then asked what jobs would be available if such an individual were limited to sedentary work. (TR 67.) The VE testified that there would be work available as a packer (1,500 jobs), a bench assembler (3,000 jobs), and a mail clerk (1,200 jobs). (TR 68.) Plaintiff, who was not represented at the hearing, was given an opportunity to cross-examine the VE; Plaintiff indicated that there were no limitations that the VE did not address and that she did not have any additional

questions. (TR 68.)

## III. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through March 31, 2014; had not engaged in substantial gainful activity since December 31, 2008; and suffered from severe depression, anxiety, degenerative disc disease, headaches, residuals of cervical radiculopathy, tinnitus, and hypoglycemia controlled by medication; she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 11-13.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not totally credible (TR 16), and she gave "no weight" the medical opinions finding that Plaintiff was disabled. (TR 17-18.) The ALJ found that although Plaintiff could not perform her past work, she had the ability to perform a limited range of light work, and there were jobs that existed in significant numbers in the economy that Plaintiff could perform. (TR 13-19.) Therefore, she was not suffering from a disability under the Social Security Act at any time from December 31, 2008, through the date of the ALJ's decision. (TR 20.)

## IV. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

6

*Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed

disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that Defendant's decision should be reversed for four reasons: (1) the ALJ failed to properly weight the medical opinions of record; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ's RFC is not supported by substantial evidence; and (4) the ALJ's questions to the VE were

insufficient. (Docket no. 10 at 18-28.)

### 1. Weight of the Medical Opinions

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at \*5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Plaintiff argues that (1) the ALJ failed to give proper weight to the opinions of Drs. Meyer and Kornblum, Plaintiff's treating physicians, and (2) the ALJ failed to give good reason for affording their opinions "no weight" because she did not discuss various factors set forth in 20 C.F.R. § 404.1527(d). (Docket no. 10 at 21-24.) Defendant argues that the ALJ properly discounted the opinions that Plaintiff was unable to work "because the regulations do not allow an ALJ to give 'controlling weight' to [such an opinion]." (Docket no. 13 at 10.) Moreover, Defendant asserts, "the ALJ reasonably declined to afford these opinions any weight because they were unsupported by and inconsistent with the medical evidence." (*Id.* at 14.)

After an extensive and refreshingly thorough review of Plaintiff's medical history (*see* TR 14-17), the ALJ discussed the opinions at hand:

> The record contains several opinions from various providers indicating that claimant was not able to work. These opinions are given no weight, as they are not consistent with the medical evidence. Specifically, imaging has failed to support the type of intensity of pain or limiting symptoms the claimant alleged. Physical examinations have shown the claimant to have normal strength in the extremities, normal gait, and that she was neurovascularly intact. Treatment has been very conservative, and her treating doctor indicated surgical intervention was not merited. The claimant has also failed to comply with treatment recommended by her doctor, such as physical therapy. Psychological limitations are also not shown to be as limiting as alleged as shown by the evaluation of Dr. Sabota and other evaluations, which revealed intact memory, normal speech, coherent thought process and good grooming.

(TR 18 (citations omitted).)

10

Plaintiff draws the Court's attention to test results and treatment notes that she contends are at odds with the ALJ's finding. (*See* docket no. 10 at 22-23.) As Defendant argues, however, neither "the treating physicians [nor Plaintiff] explain how these MRI results translated into functional limitations or how they would otherwise render Plaintiff unable to work." (Docket no. 13 at 11.) Thus, the ALJ was permitted to give the physicians' opinions less weight. (*Id.* (citing 10 C.F.R. § 404.1527(d)(3) (stating, "the better ah explanation a source provides for an opinion, the more weight we will give that opinion")).)

Plaintiff then asserts that the ALJ failed to consider the length of Plaintiff's treatment with Drs. Meyer and Kornblum, her frequency of treatment with them, or their specializations. (Docket no. 10 at 23.) But the Sixth Circuit has upheld the decision of an ALJ to give less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) if the ALJ provides "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

11

The Court finds that the ALJ clearly articulated his reasoning for affording no weight to the opinions of Drs. Meyer and Kornblum that Plaintiff was unable to work; the ALJ found that these opinions were inconsistent with the objective medical evidence, inconsistent with the doctors' own treatment plans, and inconsistent with Plaintiff's failure to follow through with her physical therapy treatment. (TR 18.) Thus, the ALJ has provided sufficient information to make clear to the Court the weight she gave to the opinions and her reason for giving them such weight. Moreover, Plaintiff only asserts that the ALJ failed to adopt the doctors' opinion that Plaintiff was unable to work, which is a decision reserved to the Commissioner. Therefore, the Court will deny Plaintiff's Motion with respect to this issue.

### 2. Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by

12

the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff's statements were not fully credible and went on to explain her rationale:

> Specifically, physical examinations have not shown significant limitations as she has normal gait and intact strength in the extremities. Imaging did not reveal significant abnormalities. Treatment has been conservative involving core strengthening, injections, bracing and a TENS unit. The claimant has not complied with physical therapy recommendations. Claimant did not return calls from her psychiatric therapist.

(TR 18.) Moreover, the ALJ described some of these findings in greater detail, discussing, in part, that "[h]er doctor opined that there was 'not enough spinal cord or nerve root compression to recommend immediate surgery;" that "claimant attended only five [physical therapy] treatment sessions[,] . . . [and when] she was contacted by treatment staff[, s]he did not return their calls; and that despite Plaintiff's doctor's desire to conduct a discogram to find the source of her pain, "[s]he did not have the discogram because she had heard it was painful." (TR 17.) Additionally, the ALJ took into consideration Plaintiff's daily activities, including that "she takes care of her

13

grandchildren[, s]he shops and can use the computer[,] . . .she feeds the goldfish[,] . . . [and she] operates a motor vehicle." (TR 17.) The ALJ then noted that, to Plaintiff's credit, she has maintained full-time employment over a number of years. (TR 17.)

Plaintiff first argues that the ALJ erred when she found that Plaintiff's treatment was conservative because the ALJ did not account for the following statement by Dr. Rapp: "I think the patient would definitely benefit from surgical intervention in her lumbar spine. Should she fail more conservative means of treatment, she may yet benefit from surgical intervention in the cervical spine, however, the patient has had severe pain for an extended period of time." (Docket no. 10 at 18 (citing TR 345).) Dr. Rapp continued, however, "Prior to any type of surgical consideration, I think the patient requires further work up and treatment." (TR 354.) Moreover, less than a month before Dr. Rapp's examination of Plaintiff, Dr. Kornblum, noted that surgery was only an option if they could isolate her pain with the discogram, and because Plaintiff declined to have the discogram, he was "not going to offer her surgery." (TR 324-25.) Thus, while Plaintiff is correct that her doctors thought she may have been a candidate for surgery, the ALJ's analysis is supported by substantial evidence in this regard.

Plaintiff then argues that the ALJ erred when she found that Plaintiff had not complied with her doctor's recommendation for physical therapy because Plaintiff was in pain during the course of her therapy and because she had the flu. (Docket no. 10 at 18-19.) While Plaintiff did report to her physical therapists that she had the flu, her discharge record also indicates that she failed to return phone calls from her therapists and that she missed several appointments, which ultimately resulted in her discharge from physical therapy. (TR 322.) Thus, even if Plaintiff missed some of her physical therapy sessions because of the flu, the ALJ's decision that Plaintiff failed to comply with her treatment is supported by substantial evidence. Plaintiff could have complied with her

14

treatment plan by returning a phone call and scheduling another appointment.

But even assuming, arguendo, that the ALJ erred when she found that Plaintiff's course of treatment was conservative and that she failed to comply with her treatment plan, there is nothing in the record to suggest that the ALJ found these matters dispositive. As she was required to do, the ALJ also considered Plaintiff's daily activities; the location, duration, frequency, and intensity of her pain; and the type, dosage, effectiveness, and side effects of any medication that she is taking. (*See* TR 14-18.) Thus, even if the Court would find otherwise, the ALJ's decision is supported by substantial evidence and it is sufficiently specific to make clear to the Court the weight the ALJ gave to Plaintiff's statements and her reasons for affording them such weight. Therefore, the Court will deny Plaintiff's Motion with respect to this issue.

### 3. Plaintiff's RFC

The ALJ found that Plaintiff

> . . . has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except performing simple, repetitive tasks (unskilled (sic) Work, because of moderate limitation in ability to maintain concentration and moderate limitations in ability to carry out detailed instructions because of pain and depression. The work cannot require frequent bending, no stair climbing, no climbing of ropes, scaffolds or ladders, and no driving, but allow a sit stand option.

(TR 13.) Plaintiff argues that the ALJ erred by not accounting for Plaintiff's need to use a cane to ambulate and that the need for a cane precludes Plaintiff from the ability to perform light work. (Docket no. 10 at 24-25.) Defendant does not address Plaintiff's argument and, instead, argues that the ALJ's RFC, in general, is supported by substantial evidence. (Docket no. 13 at 8-12.)

With regard to Plaintiff's contention, Plaintiff argues that she reported the need to use a cane on her April 3, 2010 Functional Report. (Docket no. 10 at 24 (citing TR 181).) Plaintiff asserts that her cane was prescribed by Dr. Kornblum on December 22, 2009, but she cites to no medical record

showing such a prescription.[1] (*See id.*) Moreover, after the ALJ questioned the VE, she asked Plaintiff, "[A]re there other limitations that you believe you have that I did not have the Vocational Expert to (sic) address?" (TR 68.) Plaintiff responded, "I don't believe so, ma'am."[2] (TR 68.) Therefore, with no objective evidence to the contrary, the ALJ's decision to exclude Plaintiff's alleged need to use a cane as a limitation in her RFC is supported by substantial evidence.

Nevertheless, even assuming that Plaintiff had such a prescription, Plaintiff has merely identified harmless error. Plaintiff asserts that her "need to use a cane for ambulation precludes the ability to perform light work activity[, and] . . . at best, [ P]laintiff would have the exertional ability to perform no more than sedentary work activity." (*Id.* at 25.) The ALJ asked the VE, "At the sedentary level, are there jobs that [a person with all of the other indicated limitations] would be able, able (sic) to perform?" (TR 67.) The VE indicated that there were jobs for such a person as a packer (1,500 jobs), a bench assembler (3,000 jobs), and a mail clerk (1,200 jobs). (TR 67-68.) The VE also indicated that these were "an example" of the jobs that were available. (TR 68.) Thus, even if the ALJ had included Plaintiff's alleged need to ambulate with a cane in her RFC, as Plaintiff indicated, the RFC would have limited her to sedentary work, and the VE testified that jobs existed in the economy for an individual with such limitations. Therefore, because Plaintiff has not shown that the ALJ erred in failing to include her cane as a limitation in her RFC, and because such an error would have been harmless, the Court will deny Plaintiff's Motion with respect to this issue.

---

[1]The Court has also searched the transcript for such a prescription to no avail.

[2]The Court recognizes that Plaintiff was not represented at her hearing. But at the start of her hearing the ALJ informed Plaintiff that she had a right to have a representative at the hearing, and Plaintiff indicated that she wished to move forward without one. (TR 30-31.) Moreover, during Plaintiff's testimony, the ALJ again asked if Plaintiff wanted a representative, and Plaintiff indicated that she chose to move forward without one so that her hearing would not be delayed and for financial reasons. (TR 46-47.)

Regarding Defendant's contention that the ALJ's RFC is supported by substantial evidence, for the reasons indicated herein, the Court agrees. The ALJ's RFC is supported by the objective evidence in the record, including Plaintiff's test results and the treatment notes of Drs. Steinbock, Sable, and Sobota. (*See* TR 14-18.) Therefore, the Court will grant Defendant's Motion for Summary Judgment.

### 4. The VE's Testimony

Plaintiff asserts that the ALJ erred (1) when she failed to inquire with the VE regarding the specific requirements of a bench assembler and a checker/inspector and (2) when she did not include in her hypothetical Plaintiff's moderately limited ability to maintain attention and concentration, complete a normal workday and workweek without interruptions, perform at a consistent pace, accept instructions, and respond to criticism. (Docket no. 10 at 25-26.) Defendant argues that the ALJ's hypothetical accounted for all of Plaintiff substantiated limitations. (TR 13.)

Plaintiff's arguments are inextricably intertwined. She argues that the VE "would have testified that such occupations have production quotas" and that the VE "would have testified all work would be precluded if the employee missed more than 1-2 days per month." (Docket no. 10 at 25-26.) Thus, it appears that Plaintiff is arguing that the ALJ failed to include her mental limitations in the RFC and that the ALJ then failed to ask the VE if such limitations would preclude work as a bench assembler or a checker/inspector.

Plaintiff draws the noted mental limitations from the report of Dr. Robert Newhouse. (*See* TR 82-83.) But as Defendant points out, Dr. Newhouse concludes that plaintiff "may have trouble with complex detailed tasks and function best in small familiar groups; [she] retains ability to do simple tasks on sustained basis." (TR 84.) Likewise, the ALJ found that Plaintiff was limited to "performing simple, repetitive tasks" and that she had "moderate limitation in ability to maintain

17

concentration and moderate limitations in ability to carry out detailed instructions." Thus, the ALJ accounted for Dr. Newhouse's opinion to the extent that the ALJ found the opinion substantiated by the remainder of the evidence.

Moreover, as Plaintiff notes, "*[P]laintiff* did not ask the VE about the requirements of the positions." (Docket no. 10 at 25 (emphasis added).) "'[N]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.'" *Wilson v. Comm'r*, No. 10-13828, 2011 WL2607098, *6 (E.D. Mich. July 1, 2011) (Cohn, J.) (quoting *Martin v. Comm'r*, 170 F. App'x 369, 374 (6th Cir. 2006)). As noted, Plaintiff had a full and fair opportunity to cross examine the VE and chose not to do so. The ALJ indicated that the VE's testimony was based on the Dictionary of Occupational Titles and on her own knowledge and experience in the job market. (TR 19.) The ALJ did not err by failing to further test the sufficiency of the VE's responses to her hypothetical questions.[3] Therefore, the Court will deny Plaintiff's Motion with respect to this issue.

Accordingly, **IT IS ORDERED**, that Plaintiff's motion for summary judgment is **DENIED**; that Defendant's motion for summary judgment is **GRANTED**; and that the decision of the Commissioner is **AFFIRMED**.

Dated: March 12, 2013          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

---

[3]Additionally, Plaintiff's arguments presume how the VE "would have testified." Plaintiff has provided no evidence to suggest that the VE would have testified in this regard; thus, Plaintiff's argument is mere speculation.

## **PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: March 12, 2013       s/ Lisa C. Bartlett
                                      Case Manager